1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9               FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   CASEY ELLEN FICKARDT,                    No.  2:21-cv-00250-EFB (SS)

12            Plaintiff,

13        v.                                  ORDER

14   COMMISSIONER OF SOCIAL
     SECURITY,
15
             Defendant.
16

17

            Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

18
     denying her application for disability benefits under Title II of the Social Security Act.  ECF No.

19
     1.  The action is before the undersigned pursuant to the consent of the parties.  The parties' cross-

20
     motions for summary judgment are pending.  ECF Nos. 14, 17.  For the reasons provided below,

21
     the court grants plaintiff's motion in part and remands the case to the Administration for further

22
     proceedings.

23
     I.       Procedural Background

24
            Plaintiff filed her first application for Disability Insurance Benefits under Title II of the

25
     Social Security Act in 2013, claiming disability beginning on October 1, 2012, from Crohn's

26
     Disease, perianal fistula, nutritional deficiency, chronic fatigue, and perianal abscess.[1]  ECF No.

27

28        ───────────────
          [1] Disability Insurance Benefits are paid to disabled persons who have contributed to the

                                            1

1    10-6 at 2-3.[2]   The Administration denied the claim, and plaintiff challenged the denial in

2    *Fickardt v. Berryhill*, E.D. Cal. Case No. 2:16-cv-02596-CMK (*"Fickardt I"*).

3            On March 1, 2017, while the court case was pending, plaintiff filed another application for

4    DIB, alleging disability from Crohn's disease, anxiety, insomnia, and chronic interstitial cystitis.

5    ECF No. 10-15 at 2-3.  The Administration denied the application, and plaintiff requested a

6    hearing before an ALJ.  Before that hearing was held, this court remanded *Fickardt I* to the

7    Administration for further proceedings.  *Fickardt I*, E.D. Cal. Case No. 2:16-cv-02596-DMC,

8    _____

9    Social Security program, 42 U.S.C. §§ 401 et seq.  To qualify for DIB, a claimant must be fully
     insured at the time of disability.  42 U.S.C. § 423(a), (c); 20 C.F.R. §§ 404.101(a), 404.131(a).  It
10   is undisputed by the parties that the last date plaintiff was insured was March 31, 2017.  ECF No.
     10-12 at 14-15.  Thus, to obtain DIB, her disability must have been present on or before that date.

11
     For DIB, disability is defined, in part, as an "inability to engage in any substantial gainful
12   activity" due to "a medically determinable physical or mental impairment."  42 U.S.C. §§
     423(d)(1)(A) & 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.
13   *See* 42 U.S.C. §§ 423(d)(1)(A), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42
     (1987).  The steps are:
14

15        Step one: Is the claimant engaging in substantial gainful activity? If so, the
          claimant is found not disabled. If not, proceed to step two.
16
          Step two: Does the claimant have a "severe" impairment? If so, proceed to step
17        three. If not, then a finding of not disabled is appropriate.

18
          Step three: Does the claimant's impairment or combination of impairments meet
19        or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the
          claimant is automatically determined disabled. If not, proceed to step four.
20
          Step four: Is the claimant capable of performing his past work? If so, the claimant
21        is not disabled. If not, proceed to step five.

22
          Step five: Does the claimant have the residual functional capacity to perform any
23        other work? If so, the claimant is not disabled. If not, the claimant is disabled.

24   *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

25   The claimant bears the burden of proof in the first four steps of the sequential evaluation process.
26   *Yuckert*, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation
     process proceeds to step five.  *Id*.
27
             [2] Citations to the administration record refer to the pagination assigned by the court's
28   electronic docketing system.

ECF No. 20 (Order dated Sept. 27, 2018).  The Administration consolidated the two applications and set both for hearing before an ALJ.

The hearing was held on October 1, 2019.  ECF No. 10-12 at 14-28.  On December 20, 2019, the ALJ issued a decision again finding plaintiff not entitled to DIB.  *Id.*  At the first two steps of the sequential analysis (see footnote 1, above), the ALJ found that plaintiff met the insured requirements of the Social Security Act on March 31, 2017, had not engaged in substantial gainful activity between that date and her alleged onset date (October 1, 2012), and had severe impairments of Crohn's disease, perianal fistula, anemia, mood disorder, and anxiety disorder.  *Id.* at 17.  The ALJ concluded that plaintiff's shoulder pain, interstitial cystitis, TMJ, and allergies were non-severe.  *Id.*

At step three, the ALJ concluded that plaintiff did not have a mental impairment or combination of impairments that met or medically equaled the severity of an impairment listed in the Social Security regulations, because plaintiff performs personal care tasks, drives, leaves her house alone, shops, manages funds, reads, and visits others.  *Id.* at 17-19.  Various records described her memory intact, her mood, judgment, insight and affect normal, her language and eye contact appropriate, and an absence of psychomotor agitation.  *Id.*  In others, plaintiff denied depression, anxiety, personality changes or crying spells.  *Id.*

At step four, the ALJ found that plaintiff could not perform her past relevant work.  *Id.* at 27.  However, at step five, the ALJ concluded that, despite her severe physical impairments, plaintiff retained the functional capacity to perform sedentary work with limitations.

> [T]he claimant is limited to frequent, not constant, stooping, kneeling, crouching and crawling stairs.  The claimant must avoid exposure to work hazards, such as unprotected heights and dangerous, moving machinery.  The claimant requires the ability to stand or walk for one minute for when sitting for one hour.  She needs to sit for one minute when standing or walking for one hour.  The claimant is limited to frequent, not constant, reaching.  The claimant is limited to performing simple routine, repetitive work.  She can respond to routine changes; she is unable to use significant judgment.  She can tolerate only occasional changes in the work setting; she is limited to making only simple work-related judgments and decisions.

*Id.* at 19-26.

////

3

1       The Administration's Appeals Counsel declined to review the decision. *Id.* at 2-5.  This

2  action followed.

3       **II.      Standard of Review**

4       The court will uphold the Commissioner's decision that a claimant is not disabled if

5  substantial evidence in the record supports the Commissioner's findings of fact and the

6  Commissioner applied the proper legal standards. *Schneider v. Comm'r of the SSA*, 223 F.3d 968,

7  973 (9th Cir. 2000); *Morgan v. Comm'r of the SSA*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v.*

8  *Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

9       The findings of the Commissioner as to any fact, if supported by substantial evidence, are

10  conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985).  Substantial evidence is

11  more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th

12  Cir. 1996).  "'It means such evidence as a reasonable mind might accept as adequate to support a

13  conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v.*

14  *NLRB,* 305 U.S. 197, 229 (1938)).

15       "The ALJ is responsible for determining credibility, resolving conflicts in medical

16  testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir.

17  2001) (citations omitted).  "Where the evidence is susceptible to more than one rational

18  interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."

19  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

20       **III.     Analysis**

21       Plaintiff argues that the ALJ made three errors that require reversal: (1) failing to give

22  proper weight to the opinions of treating physician's Light, Hassid, and Pham; (2) failing to

23  properly evaluate plaintiff's testimony; and (3) posing a flawed hypothetical question to the

24  vocational expert.

25       Opinions of Treating Physicians.  For Social Security claims filed prior to March 27, 2017

26  (as plaintiff's was), 20 C.F.R. § 404.1527 provides the framework used by the Administration for

27  evaluating medical opinions.  That regulation provides that the Administration will give

28  controlling weight to a treating physician's opinion on the nature and severity of a claimant's

impairment if the opinion "is well-supported by medically acceptable clinical and laboratory

diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case

record." 20 C.F.R. § 404.1527(c)(2). If not given controlling weight, the agency considers the

following factors to determine how much weight to give the opinion:

> (i) Length of the treatment relationship and the frequency of examination. Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion. When the treating source has seen you a number of times and long enough to have obtained a longitudinal picture of your impairment, we will give the medical source's medical opinion more weight than we would give it if it were from a nontreating source.
>
> (ii) Nature and extent of the treatment relationship. Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion. We will look at the treatment the source has provided and at the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories. For example, if your ophthalmologist notices that you have complained of neck pain during your eye examinations, we will consider his or her medical opinion with respect to your neck pain, but we will give it less weight than that of another physician who has treated you for the neck pain. When the treating source has reasonable knowledge of your impairment(s), we will give the source's medical opinion more weight than we would give it if it were from a nontreating source.

*Id.* In addition, in evaluating any medical opinions (not just those from treating sources), the

agency gives greater weight to opinions that are: (1) from someone who has examined the

claimant; (2) supported by relevant evidence; (3) consistent with the record; (4) from someone

with a relevant specialization; and (5) supported by any other factors brought to the agency's

attention. 20 C.F.R. § 404.1527(c).

Under *Trevizo v. Berryhill*, 862 F.3d 987 (9th Cir. 2017), where a treating physician's

opinion is uncontradicted, the ALJ must provide clear and convincing reasons supported by

substantial evidence to reject the opinion. *Id.* at 997-98. Where a treating physician's opinion is

contradicted by another doctor's opinion, the ALJ must provide specific and legitimate reasons

supported by substantial evidence to reject the opinion. *Id.*

The ALJ addressed the medical opinions provided in plaintiff's case as follows:

> The undersigned considered the opinions of State agency medical consultants L. DeSouza, M.D., and H. Pham, M.D. (Ex. 2A and 4A). Dr. DeSouza opined that the claimant could perform light work, with the claimant alternating between sitting and standing hourly for a minute for relief on rectal area. Dr. DeSouza also opined that the claimant could occasionally climb ladders, ropes, and

scaffolds, and could frequently perform all other postural activities.  Finally, Dr. DeSouza opined that the claimant is limited to frequent overhead reaching with the left upper extremity.  In comparison, Dr. Pham opined that the claimant could perform the full range of light work.

The undersigned also considered the opinions of State agency medical consultants, D. Pong, M.D., and L. Zuniga, M.D. (Ex. 9A and 11A). Drs. Pong and Zuniga opined the claimant is capable of sedentary/light work. State agency found the claimant capable of lifting and carrying 10 pounds frequently and 20 pounds occasionally; however, they limited the claimant to standing and walking 4 hours in an 8-hour workday.  Further, the doctors opined the claimant is limited to occasional postural limitations.

The undersigned gives partial weight to State agency medical consultants' opinions. To the extent that the undersigned's residual functional capacity varies with the above opinions, this is attributable to additional evidence, including hearing testimony, that was not available to the consultants.  First, the undersigned retained the exertional limitation for sedentary work. The undersigned adjusted postural limitations based on evidence of largely normal physical examinations (e.g. Ex. 2F, page 5, 30F, pages 2, 3 and 7 and 34F, page 5).  The undersigned added a restriction from work hazards to promote safety in the workplace with consideration to the claimant's history of anemia and fatigue. The undersigned added a break to sit/stand to accommodate occasional discomfort secondary to the claimant's severe impairments.

Next, the undersigned considered several opinions from M. Light, M.D. (Ex. 8F, pages 3 and 6).  In October 2013, he opined that the claimant is totally disabled from any employment for the foreseeable future (Ex. 10F, page 6).  Similarly, in February 2014, Dr. Light opined that the claimant is totally disabled (Ex. 12F, page 2).  Furthermore, in a medical source statement submitted in October of 2013, Dr. Light opined that the claimant is incapable of low stress jobs and that pain, fatigue, and other symptoms would constantly interfere with the claimant's attention and concentration (Ex. 9F, page 5).  Next, he opined that the claimant could sit for zero to one hour in an eight-hour workday and could stand and walk for zero to one hour in an eight hour workday (Ex. 9F, page 5). Dr. Light then opined that the claimant could occasionally lift and carry between zero to five pounds (Ex. 9F, page 6). He also opined that the claimant would need ready access to a restroom and she would be away from her workstation about ten minutes at a time (Ex. 9F, page 7). Dr. Light then sent a letter dated February of 2014, in which he opined that the claimant cannot perform any prolonged standing or sitting due to the pain and location of her fistula (Ex. 11F). He also opined that the claimant cannot walk for more than twenty or thirty feet without pain and cannot lift, push, or pull whatsoever (Ex. 11F, page 2). He rendered additional statements, wherein he assessed the claimant as disabled or unable to sustain work function in any significant capacity (e.g. Ex. 11F, page 2).

In addition to these opinions, the undersigned considered the opinions of E. Hassid, M.D. (e.g. Ex. 22F). Dr. Hassid opined that the claimant could perform a job in a seated position for less than one hour and could perform a job in a standing and/or walking position for less than one hour. He opined that it is medically necessary for the claimant to avoid continuous sitting in an eight-hour workday and would need to get up from a seated position every ten minutes. Additionally, he opined that the claimant could occasionally lift and carry between zero and five pounds. He then opined that the claimant has moderate manipulative limitations and she would need to take unscheduled breaks to rest at

unpredictable intervals during an eight-hour workday. Also, Dr. Hassid opined that the claimant would be absent from work more than three times per month. Finally, he opined that the claimant continues to be disabled and is not able to work at any capacity (Ex. 22F). Also, at several appointments, Dr. Hassid opined that the claimant is disabled and/or unable to work (e.g. Ex. 26F, page 5 and 27F, page 50). He wrote additional reports, wherein he explained the claimant's inability to maintain employment in any capacity, requested the claimant receive benefits and reiterated the claimant's inability to perform even sedentary work (e.g. Ex. 31F and 42F).

Along with these opinions, the undersigned considered the opinions of E. Pham, M.D. (Ex. 24F). She opined that the claimant's pain, fatigue, and other symptoms would constantly interfere with attention and concentration. Also, she opined that the claimant is incapable of even low stress jobs. Dr. Pham then opined that the claimant could sit for zero to one hour and stand and walk for zero to one hour in an eight-hour workday. Next, she opined that the claimant could occasionally lift and carry between five to ten pounds. Finally, she opined that the claimant should not be working at any capacity due to functional disability (Ex. 24F). Dr. Pham rendered additional opinions, wherein she emphasized the claimant is unable to work in any capacity and unable to perform even sedentary work (e.g. Ex. 46F).

The undersigned also considered the opinion of K. Grumstrup, NP (Exhibit 27F, p. 139). Ms. Grumstrup opined that the claimant is disabled and unable to work at any capacity (e.g. Ex. 28F, page 139).

The undersigned gives these opinions little weight. First, many of the findings relate to specific conclusions of disability or an inability to work. These findings are reserved to the Commissioner per 20 CFR 404.1527(e). The remainder of the findings restrict the claimant to modified sedentary work with significant limitations. In fact, the opinions indicate the claimant is unable to perform even sedentary work. These opinions are given little weight. First, the opinions are inconsistent with objective evidence. For example, they are inconsistent with evidence of normal physical examinations throughout the period at issue (e.g. Ex. 2F, page 5, 30F, pages 2, 3 and 7, 34F, page 5 and 40F, page 122). As stated, specific findings often included normal abdominal examination with no tenderness to palpation, no guarding, no spasm and no sign of peritoneal irritation (e.g. Ex. 2F, page 5 and 5F, pages 7 and 11). Additional evidence included normal strength and sensation in all extremities, normal balance and normal coordination (e.g. Ex. 5F, page 11 and 18F, page 9). These findings contrast with the extreme limitations set forth by Drs. Light, Hassid and Pham. For example, these physicians opined the claimant is capable of lifting and carrying a maximum of zero to five pounds. This finding contrasts with evidence of full muscle tone and strength in all extremities (e.g. Ex. 5F, page 11 and 18F, page 9). One would expect evidence of muscle weakness or atrophy given the severity of the lifting limitations. In another example, the physicians reported excessive absenteeism, whereas there are extensive examinations showing solely normal results (e.g. Ex. 2F, page 5, 30F, pages 2, 3 and 7, 34F, page 5 and 40F, page 122). Second, these extreme opinions contrast with the conservative treatment history. For example, records indicated the claimant was off medication, and did not want remicaide, humira or surgery during the period at issue (e.g. Ex. 41F, pages 23 and 24). To this end, there are significant periods, wherein the claimant treated her condition naturally or holistically (e.g. Ex. 40F, page 235). Finally, the extreme opinions are inconsistent with daily activities. As stated above, the record indicates the claimant has remained quite active, including performing ballroom dancing and yoga (e.g. Ex. 27F, page 51) and going to the gym 3-4 times per week (Ex. 27F,

page 53). Additional reports showed the claimant has been capable of performing personal care tasks, caring for pets, preparing meals, completing household chores, driving a car, leaving the house alone, shopping in stores, managing funds, reading and visiting with others (Ex. 20E). One would expect more restricted activities given the severity of the limitations.

***

Next, the undersigned considered Dr. Deller's opinion. Dr. Deller testified the claimant is capable of work function. He opined the treating physicians' opinions are not supported by objective evidence of record. He opined that given the limitations, one would expect to see more specialized treatment and objective evidence. He found no evidence of marked limitation in concentration, persistence or pace (Hearing Testimony).

The undersigned gives this opinion some weight to the extent it shows the claimant is capable of modified sedentary work. This finding is supported by objective evidence, such as evidence of normal strength and sensation in all extremities, normal balance and normal coordination (e.g. Ex. 5F, page 11 and 18F, page 9). It is consistent with the limited course of medical care and daily activities, as discussed above.

ECF No. 10-12 at 22-26.

As an initial matter, plaintiff takes issue with the ALJ's statements that various doctors' opinions that plaintiff was disabled addressed a matter reserved to the Commissioner.  20 C.F.R. § 404.1527(d)(1) provides: "A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled," because the ultimate issue of disability under the Act is reserved to the Commissioner.  In this case the ALJ did not, as plaintiff suggests, discredit the opinions simply because they included an opinion on ultimate disability. Instead, the ALJ provided various reasons for giving little weight to the opinions of treating sources Light, Hassid, E. Pham, and Grumstrup.  The issue, then, is whether those reasons are sufficient.

Because their opinions as to the extent of plaintiff's disability was contradicted by the testimony of Dr. Daller (referred to in the ALJ opinion as "Dr. Deller"), the ALJ was required to provide specific and legitimate reasons supported by substantial evidence to reject them.  He provided the following specific and legitimate reasons, supported by citations to the record: (1) the extreme limitations provided in the opinions of the treating physicians were inconsistent with many normal physical examination findings over the period in question; (2) plaintiff's conservative and naturalistic approach to treatment (including her rejection of various Crohn's

1    disease medications and surgery) indicated her condition was not as severe as the treating doctors

2    opined; (3) plaintiff reported various life activities that were inconsistent with the extreme

3    limitations indicated by her treating doctors; and (4) Dr. Daller testified that the opinions of the

4    treating physicians were not supported by the record because one would expect to find more

5    specialized treatment and objective evidence of disability if plaintiff were so limited.  ECF No.

6    10-12 at 22-25.

7         Plaintiff faults the ALJ for finding that the treating sources' limitations were inconsistent

8    with record evidence, arguing that "[n]o physician even remotely disputed that Plaintiff has a

9    severe case of Crohn's disease and the clinical findings are consistent with that diagnosis."  ECF

10   No. 14-1 at 25.  However, Dr. Daller did dispute this in his hearing testimony based on plaintiff's

11   medical records.  ECF No. 10-12 at 50-52.  He noted that no record of plaintiff having a

12   colonoscopy existed and that plaintiff received her care from a naturopath (Hassid) and a family

13   practitioner (Pham) when, in his experience, a person with disabling Crohn's would be treated by

14   a gastrointestinal specialist.  *Id.*

15        Plaintiff next faults the ALJ for rejecting the opinions of the treating physicians based on

16   plaintiff's conservative treatment.  Plaintiff cites to *Lapeirre-Gutt v. Astrue*, 382 Fed. Appx. 662,

17   664 (9th Cir. 2010), in which the Ninth Circuit faulted an ALJ for discrediting a claimant's

18   allegation of pain based on her decision not to pursue physical therapy.  However, the court in

19   *Lapeirre-Gutt* noted that "[a]n unexplained, or inadequately explained, failure to seek treatment

20   or follow a prescribed course of treatment can be a basis to discount a claimant's symptom

21   testimony."  *Id.*  Plaintiff offered the ALJ no explanation of her repeated decisions over the years

22   to reject a diagnostic colonoscopy or a less "naturalistic" treatment for her condition.  And, unlike

23   the *Lapeirre-Gutt* case, the ALJ here did not simply rely on his own ideas about plaintiff's

24   treatment but instead relied on the testimony of Dr. Daller.

25        Plaintiff also argues that Dr. Daller's testimony was consistent with the treating

26   physicians' opinions, citing to his testimony that plaintiff "will need bathroom breaks that

27   accommodate whatever the timings are in terms of the frequency of her bowel movements."  ECF

28   No. 10-12 at 57.  Plaintiff also cites to Dr. Daller's testimony that Dr. Hassid's opinion of

1    plaintiff's severe limitations "would be consistent with a severe acute flare." *Id.* at 64.  But Dr.

2    Daller immediately went on to say that, were plaintiff to have frequent acute flares, he would

3    expect to see "interactions with the healthcare system, i.e. emergency room visits, unscheduled

4    doctor visits, IV fluid, opioid treatments . . . and other pharmacologic therapies targeting Crohn's

5    disease." *Id.*  But he saw no evidence of that in the record.  *Id.*  Rather, Dr. Daller testified that

6    Dr. Hassid's opinion that plaintiff had debilitating abdominal and joint pain "just is not

7    believable" because Hassid did not escalate plaintiff's treatment and plaintiff did not seek

8    specialized care.  *Id.* at 62.

9            Lastly, plaintiff argues that the ALJ should not have used her activities of daily life to

10   discredit the opinions of her treating physicians, citing to Ninth Circuit cases in which the

11   Administration was faulted for using such activities to conclude that a claimant was not disabled.

12   *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014); *Vertigan v. Halter*, 260 F.3d 1044, 1050

13   (9th Cir. 2001).  However, the ALJ did not use plaintiff's activities in the manner censured by

14   these authorities – to find that plaintiff could work – but instead simply noted that the extreme

15   nature of the limitations included in the opinions of her treating physicians were contradicted by

16   some of her daily activities and this contradiction (in addition to other factors) suggested that the

17   opinions should be afforded little weight.

18           Accordingly, the court finds no error in the ALJ's evaluation of the opinions of plaintiff's

19   treatment providers.

20           <u>Plaintiff's Testimony</u>.  Plaintiff next argues that the ALJ lacked substantial evidence

21   supporting his conclusion that plaintiff's testimony regarding the severity of her symptoms.  In

22   the Ninth Circuit, an ALJ must engage in

23           a two-step analysis to determine whether a claimant's testimony regarding
             subjective pain or symptoms is credible.  First, the ALJ must determine whether
24           the claimant has presented objective medical evidence of an underlying
             impairment which could reasonably be expected to produce the pain or other
25           symptoms alleged.  In this analysis, the claimant is not required to show that her
             impairment could reasonably be expected to cause the severity of the symptom
26           she has alleged; she need only show that it could reasonably have caused some
             degree of the symptom.  Nor must a claimant produce objective medical evidence
27           of the pain or fatigue itself, or the severity thereof.

28

1

2    If the claimant satisfies the first step of this analysis, and there is no evidence of
     malingering, the ALJ can reject the claimant's testimony about the severity of her
     symptoms only by offering specific, clear and convincing reasons for doing so.
3    This is not an easy requirement to meet: The clear and convincing standard is the
     most demanding required in Social Security cases.

4    *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014) (internal citations and quotation marks

5    omitted).  The ALJ must state which testimony is not credible and what evidence supports that

6    determination.  *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir 1993).  The reasons provided must

7    be specific enough to allow a reviewing court to determine that the ALJ's rejection of the

8    claimant's testimony was not arbitrary.  *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995).  The

9    ALJ addressed plaintiff's testimony as follows:

10   The claimant alleges that she is disabled due to Crohn's disease, perianal fistula,
     anemia, mood disorder and anxiety disorder. The claimant testified that she has
11   diarrhea every day. She further testified that she is in the bathroom about ten
     times on a good day and fifteen to twenty times on a bad day. Moreover, the
12   claimant testified that she takes sitz baths four to five times on a bad day and 3-4
     times on a normal day. The claimant testified that she requires infusions and
13   injections to treat fatigue. The claimant explained she gets B12 shots and
     infusions of different nutrients; effects typically last 3 hours. The claimant
14   reported she cannot sit longer than 10 minutes and needs assistance with lifting.
     The claimant alleged mental limitations in memory, completing tasks,
15   concentration, following instructions and getting along with others. The claimant
     indicated she deals poorly with stress or change. The claimant advised she is
16   restricted in daily activities. The claimant alleged she is unable to sustain work
     function on a regular and continuous basis (Ex. 1E, 4E, 20E, 27E and Hearing
17   Testimony).

18   After careful consideration of the evidence, the undersigned finds that the
     claimant's medically determinable impairments could reasonably be expected to
19   cause the alleged symptoms; however, the claimant's statements concerning the
     intensity, persistence and limiting effects of these symptoms are not entirely
20   consistent with the medical evidence and other evidence in the record for the
     reasons explained in this decision.

21
     As for the claimant's statements about the intensity, persistence, and limiting
22   effects of her symptoms, they are inconsistent for several reasons.

23   As to her physical impairments, the claimant's allegations about the intensity,
     persistence, and limiting effects of her symptoms are inconsistent with objective
24   evidence. For example, records reflected normal physical examinations
     throughout the period at issue (e.g. Ex. 2F, page 5, 30F, pages 2, 3 and 7, 34F,
25   page 5 and 40F, page 122). Specific findings often include normal abdominal
     examination with no tenderness to palpation, no guarding, no spasm and no sign
26   of peritoneal irritation (e.g. Ex. 2F, page 5 and 5F, pages 7 and 11). Additional
     evidence included normal strength and sensation in all extremities, normal
27   balance and normal coordination (e.g. Ex. 5F, pages 11 and 18F, page 9). These
     findings are inconsistent with the claimant's allegations of daily, severe
28   abdominal pain. For example, the claimant testified that she "always" has chronic

11

pain symptoms, whereas these examinations reflect periods of largely normal functioning. The undersigned acknowledges intermittent findings of distended or tender abdomen and/or complaints of fatigue (e.g. Ex. 3F, page 4, 31F and 34F, page 1); however, this evidence is offset by evidence of largely normal examinations (e.g. Ex. 2F, page 5, 30F, pages 2, 3 and 7 and 34F, page 5) or minimal abnormalities. For example, in February 2014, complaints included abdominal pain, and findings included tenderness in the right lower quadrant. Additional findings included good bowel sounds, no peritoneal signs and only a small, soft abscess with minimal erythema and no induration superior to the rectum (Ex. 12F, pages 2-4). In May 2014, examinations revealed evidence of a fistula; however, physicians indicated it was under control (Ex. 20F, page 4). In June 2015, physicians noted evidence of a fistula, but otherwise reported a normal examination (Ex. 40F, pages 234-238). In May 2016, physicians reported fatigue, but otherwise reported a normal examination (Ex. 40F, pages 83-86). These examinations suggest the claimant retains significant functioning even during exacerbation in symptoms.

As to her physical impairments, the claimant's allegations about the intensity, persistence, and limiting effects of her symptoms are inconsistent with treatment reports and treatment history. For example, reports showed the claimant sought solely conservative care for her allegedly disabling symptoms with significant periods of medical treatment cessation (e.g. using natural approaches for alleviation) (Hearing Testimony). For example, the claimant was not taking medication in October 2012 for Crohn's disease, instead preferring a natural approach (Ex. 2F, page 5). In December 2012, records indicated the claimant generally had two bowel movements per day (Ex. 3F, page 3). In June 2014, treating physicians reported the claimant's fistula had pus on an occasional basis (Ex. 25F, page 2). In September 2014, records indicated the claimant was off medication, and did not want remicaide, humira or surgery (Ex. 41F, pages 23 and 24). In June 2015, treating physicians reported treatment with dietary changes, homeopathic medicine and vitamins/minerals. Physicians noted the claimant had no worsening despite prescription medication cessation (Ex. 40F, page 235). In September 2015, December 2015 and August 2016, reports continued to show conservative care without medication (Ex. 40F, pages 52 and 209 and 41F, page 9). In August 2016, records indicated the claimant worked hard to be "as stable as she can." Physicians indicated the claimant had recurrent abscesses; however, notations showed the abscesses usually drained within 3 days and were less physically visible (Ex. 40F, page 48).

Per SSR 16-3p, the undersigned has considered alternative reasons for the claimant's history of conservative care, including, but not limited to mental limitations and cost. The undersigned notes that medical expert Dr. Deller indicated that he would expect specialized care if the claimant were disabled as alleged (Hearing Testimony). This testimony further supports the above analysis.

As to her mental impairments, the claimant's allegations about the intensity, persistence, and limiting effects of her symptoms are inconsistent with objective evidence. For example, treating physicians reported normal mental status examinations throughout the period at issue (e.g. Ex. 5F, pages 7 and 11, 18F, page 9 and 41F, pages 6 and 10). Specific findings included intact memory, normal mood and affect, appropriate language and eye contact, normal judgment, normal insight and no psychomotor agitation (e.g. Ex. 41F, pages 10, 16, 18 and 24). In additional reports, the claimant specifically denied depression, anxiety,

/////

personality changes or crying spells (e.g. Ex. 5F, page 7 and 41F, page 28). This evidence contrasts with allegations of ongoing, disabling mental health symptoms.

As to her mental impairments, the claimant's allegations about the intensity, persistence, and limiting effects of her symptoms are inconsistent with treatment reports and treatment history. For example, the record reflects no consistent mental health treatment from her treatment provider Stephen Diggs, Ph. D. The claimant testified that she only sees Dr. Diggs on an as needed basis, and she further testified that she saw Dr. Diggs about three times in 2014 (Hearing Testimony). In November 2014, Dr. Diggs explained he provided treatment to the claimant from October 2008 through October 2014. He stated that the claimant took months off without therapy (Ex. 28F, page 5). Per SSR 16-3p, the undersigned has considered alternative reasons for the claimant's lack of consistent mental care, including, but not limited to mental limitations and cost. As these rationales are not substantiated by significant evidence, the undersigned finds the claimant's history of treatment shows her symptoms are not as severe as alleged.

As to her physical and mental impairments, the claimant's allegations about the intensity, persistence, and limiting effects of her symptoms are inconsistent with daily activities. First, the record indicates the claimant has been capable of taking educational courses during the period at issue (Hearing Testimony). Such evidence suggests the claimant has retained significant physical and mental abilities. Furthermore, the claimant admitted she is capable of significant physical activity/exercise. Specifically, records indicated the claimant was capable of ballroom dancing and yoga (e.g. Ex. 27F, page 51) and going to the gym 3-4 times per week (Ex. 27F, page 53). These activities contrast with allegations of ongoing, disabling symptoms. For example, they contrast with the claimant's allegation that she "always" has chronic pain (Hearing Testimony).

Finally, the claimant admitted she has been capable of performing personal care tasks, caring for pets, preparing meals, completing household chores, driving a car, leaving the house alone, shopping in stores, managing funds, reading and visiting with others (Ex. 20E). The record also shows that the claimant traveled to Maui, and got married during the period at issue (Ex. 34F, page 1). Such activities are not consistent with allegations of disability.

ECF No. 10-12 at 19-22.

The ALJ properly provided specific clear and convincing reasons for discrediting plaintiff's testimony regarding the severity of her symptoms. As discussed above, Dr. Daller testified that the record was not consistent with the severity of symptoms alleged. Nor was the conservative, naturalistic treatment approach. Further, it was not improper for the ALJ to conclude that some of plaintiff's daily activities did not square with her testimony regarding the severity of her symptoms. "While a claimant need not vegetate in a dark room in order to be eligible for benefits, . . . the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting . . ..

1    Even where those activities suggest some difficulty functioning, they may be grounds for

2    discrediting the claimant's testimony to the extent that they contradict claims of a totally

3    debilitating impairment." *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012) (internal

4    citations and quotation marks omitted).

5           Accordingly, the court finds no error in the ALJ's evaluation of plaintiff's testimony.

6           Hypothetical Question. Lastly, plaintiff argues that "[t]he ALJ failed to present a

7    hypothetical question to the vocational expert that accurately described all of Ms. Fickardt's

8    mental limitations found in the ALJ's decision." ECF No. 14-1 at 31. In the hypothetical

9    provided to the expert, the ALJ limited plaintiff to simple, routine, repetitive work; only

10   occasional changes in the work setting; and only simple judgments and decisions. ECF No. 10-12

11   at 90. Plaintiff argues that these limitations did not reflect plaintiff's moderate limitations (as

12   found by the ALJ) in ability to maintain pace over the course of a workday or workweek,

13   concentrate over time, and persist at tasks.

14          A hypothetical question posed to a vocational expert must "include all of the claimant's

15   functional limitations, both physical and mental." *Flores v. Shalala*, 49 F.3d 562, 570 (9th Cir.

16   1995); *see also Osenbrock v. Apfel*, 240 F.3d 1157, 1163 (9th Cir. 2001). However, there is

17   conflicting authority as to whether a limitation to "simple, routine, repetitive work" adequately

18   encompasses a limitation in pace, concentration, and/or persistence. *Compare Brink v. Comm'r*

19   *of Soc. Sec.*, 343 Fed. Appx. 211 (9th Cir. 2009) *with Stubbs-Danielson v. Astrue*, 539 F.3d 1169

20   (9th Cir. 2008).

21          In *Stubbs-Danielson*, the circuit court concluded that moderate pace limitations
     may translate into a "simple task" RFC without additional conditions. *Stubbs-*
22   *Danielson*, 539 F.3d at 1173-74. That is, an ALJ can account for a claimant's
     moderate functional limitations in the residual functional capacity with a simple
23   work limit. *Mitchell v. Colvin*, 642 F. App'x 731, 733 (9th Cir. 2016); *see also*
     *Duran v. Berryhill*, No. CV 16-7416 JPR, 2017 U.S. Dist. LEXIS 91707, 2017
24   WL 2588069 at * 8 (C.D. Cal. 2017) (claimant's moderate impairments were
     properly translated by the ALJ into an RFC for "'simple, repetitive tasks' with
25   limitations on fast-paced work, teamwork, and contact with the public, coworkers,
     and supervisors").
26
          On the other hand, a simple work RFC may not adequately address a claimant's
27   personal situation. When an ALJ finds that a claimant has a moderate limitation in
     maintaining concentration, persistence, and pace, merely limiting the claimant's
28   potential work to "simple, repetitive work" without including other limitations can

                                            14

1    be error. *Brink v. Comm'r Soc. Sec. Admin.*, 343 F. App'x. 211, 212 (9th Cir.
2    2009) ("The Commissioner's contention that the phrase 'simple, repetitive work'
     encompasses difficulties with concentration, persistence, or pace is not
3    persuasive."); *Lubin v. Comm'r of Soc. Sec. Admin.*, 507 F.App'x 709, 712 (9th
     Cir. 2013) ("Although the ALJ found that [the claimant] suffered moderate
4    difficulties in maintaining concentration, persistence, or pace, the ALJ erred by
     not including this limitation in the residual functional capacity determination or in
5    the hypothetical question to the vocational expert.").

6    *Juanita S. v. Berryhill*, No. CV 17-7659 MRW, 2018 U.S. Dist. LEXIS 163468, at *6-7 (C.D.

7    Cal. Sep. 24, 2018).

8            Here, "[a]cting in an abundance of caution" despite contrary evidence in the record, the

9    ALJ found that plaintiff had a moderate limitation "[i]n understanding, remembering or applying

10   information," and in "concentrating, persisting or maintaining pace[.]"  ECF No. 10-12 at 17-18.

11   While the RFC's limitation to simple, routine, repetitive work and simple judgments could

12   encompass plaintiff's moderate limitation in concentration, understanding, memory, and ability to

13   apply information, it is silent on plaintiff's moderate limitation in persisting and maintaining

14   pace.  Defendant argues that plaintiff cites no evidence in support of the moderate limitations she

15   argues should have been included in the RFC, but this argument is unavailing where, as here, the

16   ALJ explicitly found that the record supported those limitations.  ECF No. 10-12 at 18.  Thus,

17   those limitations must be included in the RFC assessment.

18           Accordingly, the court finds that the ALJ erred by failing to include plaintiff's moderate

19   limitations in persisting and maintaining pace in the RFC posed to the vocational expert.

20   **IV.    Order**

21           For the foregoing reasons:

22       1.  Plaintiff's February 25, 2022 motion for summary judgment (ECF No. 14) is

23           GRANTED as to plaintiff's claim that the ALJ erroneously failed to include a

24           moderate limitation in ability to persist or maintain pace in the RFC posed to the

25           vocational expert and is otherwise DENIED;

26       2.  Defendant's April 27, 2022 cross-motion for summary judgment (ECF No. 17) is

27           GRANTED as to plaintiff's claims that the ALJ erroneously evaluated her testimony

28           and the opinions of her treating physicians and is otherwise DENIED;

1         3.  The Clerk is directed to enter judgment in plaintiff's favor solely as to her claim that

2             the ALJ erroneously failed to include a moderate limitation in ability to persist or

3             maintain pace in the RFC posed to the vocational expert; and

4         4.  The matter is remanded to the Social Security Administration for further proceedings

5             consistent with this order.

6 Dated: September 21, 2022.

7

8                       EDMUND F. BRENNAN

                       UNITED STATES MAGISTRATE JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28